UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-00311-JLS (JCGx)                                   Date:  July 6, 2015
Title:  Michael M. Sato v. Orange County Department of Education

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

|  Terry Guerrero  |         N/A        |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                                 Not Present

**PROCEEDINGS:   (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S  MOTION TO DISMISS COMPLAINT (Doc. 10)**

Before the Court is Defendant Orange County Department of Education's Motion to Dismiss Plaintiff's Complaint.  (Mot., Doc. 10.)  Plaintiff Michael M. Sato filed an Opposition, and Defendant replied.[1]  (Opp'n, Doc. 14; Reply, Doc. 15.)  Having considered the briefing submitted by the parties and taken the matter under submission, the Court GRANTS in part and DENIES in part Defendant's Motion.

**I.    INTRODUCTION**

On August 11, 2014, Defendant Orange County Department of Education ("OCDE") offered Plaintiff Michael M. Sato a position as a Systems Database Architect, which is "on the classified management salary schedule."[2]   (Compl. ¶ 8, Doc. 1.) Plaintiff accepted the position, moved from Oahu, HI to Orange County, CA, and began

---

[1] On May 12, 2015, the Court ordered the parties to submit supplemental briefing regarding the issue of Eleventh Amendment immunity.  (Order, Doc. 17.)  On May 22, 2015, Defendant filed a Supplemental Memorandum.  (Suppl. Mem., Doc. 18.)  Plaintiff filed a Supplemental Opposition, and Defendant filed a Supplemental Reply.  (Suppl. Opp'n, Doc. 24; Suppl. Reply, Doc. 25.)

[2] When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the complaint. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 5 (2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-00311-JLS (JCGx)                                    Date: July 6, 2015
Title: Michael M. Sato v. Orange County Department of Education

full time employment with OCDE around August 20, 2014.  (Id. ¶¶ 8, 13.)  During his initial job orientation, Plaintiff received the OCDE Board-approved Management Employee Guidelines ("Guidelines").  (Id. ¶ 9.)  The Guidelines state that classified management employees such as Plaintiff "serve an initial probationary period [of] one (1) year," during which they "can be terminated . . . for failing to meet the expectations of the job."  (Id. ¶ 9; Compl., Ex. B, "Guidelines" at 3, Doc. 1-2.)  According to Section XXVI of the Guidelines, "[t]ermination during the probationary period does not require that the provisions of Section XXVI, Dismissal, be met.  Section XXVI is applicable only to employees who have completed the initial probationary period."  (Compl. ¶ 16; Guidelines at 7.)

Around September 4, 2014, having received no warning "about any serious deficiencies or issues in his performance, or how he had not fulfilled the stated requirements of the position," Plaintiff was called to a meeting and informed that he was being terminated immediately.  (Compl. ¶¶ 10-11.)  Plaintiff alleges that he was provided "no pre- or post-termination statement from [] OCDE as to the reasons for his termination, nor was [he] ever provided a chance to respond."  (Id. ¶ 12.)

On February 25, 2015, Plaintiff filed a Complaint against OCDE, asserting claims for (1) violation of 42 U.S.C. § 1983 and (2) breach of contract.  (Id. ¶¶ 14-27.)  Both claims are based on Plaintiff's contention that the OCDE Guidelines "restricted the grounds upon which [Plaintiff] could be terminated to a finding of cause."  (Id. ¶ 17.)

On March 19, 2015, OCDE moved to dismiss Plaintiff's Complaint in its entirety.  (*See generally* Mem, Doc. 10-1.)

## II.     LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must (1) "contain sufficient allegations of underlying facts to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-00311-JLS (JCGx)                                                Date:  July 6, 2015
Title:  Michael M. Sato v. Orange County Department of Education

give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds in Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### III.   DISCUSSION

Defendant has moved to dismiss both of Plaintiff's claims.  The Court will address each claim in turn.

#### A.   42 U.S.C. § 1983 Claim

Plaintiff's § 1983 claim is based on the assertion that, because the OCDE Guidelines "restricted the grounds upon which [Plaintiff] could be terminated to a finding of cause," (Compl. ¶ 17), Plaintiff's termination without cause constituted a violation of his procedural and substantive rights of due process with respect to his "constitutionally-protected property interest in his present and future employment with [] OCDE."  (Id. ¶ 16).  Defendant, however, has moved to dismiss Plaintiff's § 1983 claim because, according to Defendant, OCDE is an arm of the State and thus immune from suit.  (Mot. at 4-5.)

In *Belanger v. Madera Unified School District*, 963 F.2d 248 (9th Cir. 1992), the Ninth Circuit held that California school districts are entitled to Eleventh Amendment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-00311-JLS (JCGx)                                                             Date:  July 6, 2015
Title:  Michael M. Sato v. Orange County Department of Education

immunity and thus immune from suit under § 1983. *Belanger*, 963 F.2d at 254. While applying the multi-factored balancing test established in *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988), *cert. denied*, 490 U.S. 1081 (1989),"[3] the *Belanger* court explained:

> Unlike most states, California school districts have budgets that are controlled and funded by the state government rather than the local districts . . . [T]he school district's budget in this case is made up of funds received from the state's general fund pursuant to a state calculated formula . . . . The state sets a revenue limit for each school district based on average attendance, subtracts property tax revenues from that limit, and allocates the balance to the school district from the state school fund. In short, the state determines the amount of money that school districts may spend per pupil and then provides the necessary state funds . . . . Under the revenue limit system, state and local revenue is commingled in a single fund under state control, and local tax revenue lost to a judgment must be supplanted by the interchangeable state funds already in the district budget . . . . In essence, any use of the commingled funds is a use of state funds . . . . Under the centralized revenue limit system, the allocation of property tax revenue is hopelessly intertwined with the allocation of state funds, and any change in the allocation of property tax revenue has a direct effect on the allocation of state funds.

*Belanger*, 963 F.2d at 250-52 (citing the 1978 and 1992 versions of Cal. Educ. Code §§ 41600–41610, 42238–42251). Thus, because the *Belanger* court found that the school district "is an agent of the state that performs state governmental functions and [because]

---

[3] In *Mitchell*, the Ninth Circuit explained that "[t]o determine whether a governmental agency is an arm of the state, the following factors must be examined: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity." *Mitchell*, 861 F.2d at 201.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 15-00311-JLS (JCGx) | Date: July 6, 2015 |
| Title: Michael M. Sato v. Orange County Department of Education | |

a judgment would be satisfied out of state funds," it held that California school districts are "immune to suit under the Eleventh Amendment." *Belanger*, 963 F.2d at 254.

*Belanger* further explained that "California's centralized control of school funding can be attributed to two key factors—decisions by the California Supreme Court in 1971 and 1976, and the adoption of Proposition 13 in 1978." *Belanger*, 963 F.2d at 251. In 1971, "the California Supreme Court determined that the system of public school financing in California that failed to equalize school spending for each student was unconstitutional." *Belanger*, 963 F.2d at 251 (citing *Serrano v. Priest*, 5 Cal. 3d 584 (1971) (*Serrano I* )). After the Ninth Circuit's decision in *Serrano I*, "[t]he California legislature responded by enacting Senate Bill 90 in an attempt to equalize public school funding." *Id.* Yet, in 1976, Senate Bill 90 was struck down when "the California Supreme Court ruled that the equal protection provisions of the California Constitution require strict statewide equalization of school spending per pupil. *Belanger*, 963 F.2d at 251 (citing *Serrano v. Priest*, 18 Cal. 3d 728 (1976) (*Serrano II*)). Thus, under *Serrano I* and *Serrano II*, the state of California "has a duty to ensure that all school districts receive an equal amount of funding per student" and "must prevent wealthier districts from raising too much local revenue." *Belanger*, 963 F.2d at 251. Following *Serrano II*, the passage of Proposition 13 "reduc[ed] and capp[ed] the property tax revenues used to fund local schools," which "inadvertently helped California achieve the result mandated in *Serrano II*" and "ensured that the state, rather than local school districts, would control funding for public schools." *Id.*

Further, "[t]he California Constitution requires the state legislature to 'provide for a system of common schools' and sets forth detailed requirements for those schools." *Belanger*, 963 F.2d at 253 (citing Cal. Const. art. IX, §§ 5, 6). As a result, "California law is well settled that providing public education is a state function." *Id.* "[A]lthough the state can assign certain duties with respect to the local operation of schools to local agencies, it cannot by such incidental delegations abdicate its role as the entity ultimately responsible for the proper and lawful functioning of the state's schools." *Id.* (citation omitted).

In *Eaglesmith v. Ward*, 73 F.3d 857 (9th Cir. 1995), the Ninth Circuit extended *Belanger*'s holding when it held that county boards of education also are state agencies entitled to Eleventh Amendment immunity in California. *Eaglesmith*, 73 F.3d at 860. On

**CIVIL MINUTES – GENERAL**      5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-00311-JLS (JCGx)            Date: July 6, 2015
Title: Michael M. Sato v. Orange County Department of Education

May 12, 2015, this Court ordered the parties to submit "supplemental briefing regarding *Belanger* . . . and *Eaglesmith* . . . and whether California school districts and county boards of education are still entitled to Eleventh Amendment immunity following the California Legislature's 2013 enactment of Assembly Bill 97 ["AB 97"]." (Order at 1, Doc. 17.)

      Plaintiff claims that "the California Legislature's massive 2013 enactment of Assembly Bill 97 completely replaces the prior statutory basis for, and upends the analysis of, *Belanger*." (Opp'n at 1). According to Plaintiff, AB 97 brings California in line with *Eason v. Clark County School District*, 303 F.3d 1137 (9th Cir. 2002), *Savage v. Glendale Union High School, District No. 205*, 343 F.3d 1036 (9th Cir. 2003), and *Holz v. Nenana City Public School District*, 347 F.3d 1176 (9th Cir. 2003), where the Ninth Circuit found that school districts in Nevada, Arizona, and Alaska, respectively, were not entitled to Eleventh Amendment immunity. (Id.) Plaintiff contends that AB 97 "explicitly abolishes the 'revenue limit' system and replaces it with a 'County Local Control Funding Formula' and 'Local Control and Accountability Plans' providing only a minimum 'base grant' of State support." (Suppl. Opp'n at 1, Doc. 24.) Thus, according to Plaintiff, the funding structure now does not prohibit a county education board or school district from "raising funds from the county in excess of the base grant provided by the state." (Id. at 2.) Plaintiff asserts that "[t]he entire thrust of [AB 97] is to decentralize control of the budgetary, administrative and educational process from the state to the local county and school district level, unambiguously eliminating the 'revenue limit' system, and decoupling the budget from one 'hopelessly interwoven' between school districts and the State." (Id. at 3.) As a result, Plaintiff contends that OCDE should be denied immunity because "AB 97 completely nullifies and vitiates Bellanger's [sic] conclusion." (Suppl. Opp'n at 24.)

      OCDE, on the other hand, contends that, "[i]n California, all funds are dispersed by the state to the various districts and county offices of education, and local revenues are not permitted to be added to these amounts. The California Constitution mandates that the state funds public schools." (Suppl. Mem. at 3 (citing Cal. Const. Art. IX.).) OCDE contends that "[t]he California Supreme Court has recognized that education has always been considered a function of the state, since California was admitted to the Union." (Suppl. Reply at 2.) Further, according to OCDE, "*Serrano I* and *Serrano II* along with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-00311-JLS (JCGx)                           Date:  July 6, 2015
Title:  Michael M. Sato v. Orange County Department of Education

Proposition 13 comprise the statutory prohibition against the OCDE or any other school district supplementing its minimum base funding grant under AB 97 with local property tax revenue." (Suppl. Reply at 7.) OCDE therefore concludes that, "[a]s the OCDE has no constitutional means of raising additional funds to supplement the grant it receives from the state under AB 97, OCDE remains completely dependent upon the state for funding. This complete dependence results in the fact that any judgment against the OCDE would have to be satisfied out of state funds as it cannot legally generate any other funds for its use." (Id.) Finally, according to OCDE, "given the fact that not all of AB 97 has been implemented, [P]laintiff cannot argue that the OCDE is no longer an arm of the state. It remains so." (Reply at 2.)

  While there is merit to Plaintiff's argument that the passage of AB 97 has brought California's public school funding regime closer to those found in Nevada, Arizona, and Alaska and analyzed by the Ninth Circuit in *Eason*, *Savage*, and *Holz*, respectively, the Court cannot say at this time that California school districts and California county boards of education are no longer entitled to Eleventh Amendment immunity.

  First, Plaintiff has failed to provide the Court with any authority or case law that calls into question the holding of *Belanger*. In fact, since the passage of AB 97, not only has every federal district in California cited *Belanger* and held that school districts are entitled to Eleventh Amendment immunity, but the Ninth Circuit also has continued to rely on *Belanger* for the proposition that "a school district cannot be sued for damages under § 1983." *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1247 (9th Cir. 2015); *see also Pierce v. Santa Maria Joint Union High Sch. Dist.*, No. 12-57296, 2015 WL 2345154, at *1 (9th Cir. May 18, 2015); *Brynjolfsson v. State Agency Los Angeles Unified Sch. Dist.*, 576 F. App'x 697, 698 (9th Cir. 2014); *Mnyandu v. Cnty. of Los Angeles*, No. CV 14-6485 DSF FFM, 2015 WL 3605157, at *6 (C.D. Cal. June 5, 2015); *V.S. by & through Sisneros v. Oakland Unified Sch. Dist.*, No. 14-CV-05144-JST, 2015 WL 3463475, at *2 (N.D. Cal. May 28, 2015); *Sisneros v. Oakland Unified Sch. Dist.*, No. 14-CV-05144-JST, 2015 WL 1431679, at *2 (N.D. Cal. Mar. 27, 2015); *Kitchen v. Lodi Unified Sch. Dist.*, No. CIV. 2:14-01436 WBS, 2014 WL 5817320, at *3 (E.D. Cal. Nov. 5, 2014); *A.A. v. Clovis Unified Sch. Dist.*, No. 1:13-CV-01043 AWI SM, 2014 WL 3488963, at *5 (E.D. Cal. July 14, 2014); *Brouillette v. Montague Elementary Sch. Dist.*, No. CIV. 2:14-840 WBS, 2014 WL 2453036, at *2 (E.D. Cal. May 30, 2014); *Everett H.*

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-00311-JLS (JCGx)                                        Date:  July 6, 2015
Title:  Michael M. Sato v. Orange County Department of Education

___

*v. Dry Creek Joint Elementary Sch. Dist.*, 5 F. Supp. 3d 1167, 1179 (E.D. Cal. 2014); *Tasia R. v. Grossmont Union High Sch. Dist.*, No. 13CV2874-WQH-DHB, 2014 WL 3734475, at *3 (S.D. Cal. July 28, 2014).

  Further, Plaintiff has failed to show that either the statutory provisions or the constitutional limitations set forth in *Serrano I* and *Serrano II* that the Ninth Circuit relied upon in *Belanger* have been undermined.  Plaintiff has not submitted to this Court any authority that would warrant this Court finding that *Serrano I* or *Serrano II* no longer requires centralized control of school funding in California, or that Proposition 13 limits the amount of local funding available to school districts.  At oral argument, Plaintiff argued that the California Supreme Court's decision in *Serrano II* has been overridden by the passage of Proposition 30.  Yet, Plaintiff has failed to cite any authority that would support such a conclusion.  While Proposition 30 amended Article XIII of the California Constitution to grant local school districts greater *control* over funds that they receive from the state, Plaintiff has failed to convince the Court that Proposition 30 changes the California Constitution's mandate that the state legislature "provide for a system of common schools," or *Serrano I*'s or *Serrano II*'s holding that the state of California "has a duty to ensure that all school districts receive an equal amount of funding per student" and "must prevent wealthier districts from raising too much local revenue."  *Bellanger*, 963 F.2d at 251.  Thus, because nothing in Proposition 30 addresses the *amount* of funding received by local school districts or the *source* of that funding, Plaintiff has failed to cite any authority that undermines *Belanger*'s conclusion that a judgment against a California school district would be satisfied out of state funds.

  In addition, AB 97 established "an eight-year phase-in timeline . . . to incrementally close the gap between actual funding and the target level of funding." 06/14/13 – Assembly Floor Analysis and 06/13/13 – Senate Floor Analysis, Assemb. B. 97, 2013 Sess. (C.A. 2013), http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201320140AB97#.  As a result, certain funding provisions that were applicable when *Belanger* and *Eaglesmith* were decided, and upon which the Ninth Circuit relied when finding that California school districts were entitled to Eleventh Amendment immunity, are still in operation today.  This Court therefore finds that, even if AB 97's amendments would warrant finding that California school districts are no longer entitled to Eleventh

___

**CIVIL MINUTES – GENERAL**    **8**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-00311-JLS (JCGx)                               Date: July 6, 2015
Title:  Michael M. Sato v. Orange County Department of Education

Amendment immunity, it would be premature for this Court to find that the reasoning and holding of *Belanger* have been undermined until all of the relevant provisions of AB 97 have been fully implemented.

Accordingly, for the reasons discussed above, the Court GRANTS OCDE's motion to dismiss Plaintiff's first cause of action and dismisses with prejudice Plaintiff's § 1983 claim.

### B.    Breach of Contract Claim

Defendant argues that Plaintiff's breach of contract claim should be dismissed because "it has long been recognized in California that public employees, especially public school employees, hold their positions not by contract, but by statute.  Such employees may not pursue actions based on common law breach of contract theories." (Mot. at 5.)  Because Plaintiff alleges that OCDE is a public entity, (Compl. ¶ 2), OCDE asserts that "all aspects of [Plaintiff's] employment, including discipline and termination[,] are set forth by the Education Code, not common law tort or contract principles."[4]  (Mot. at 8.)  As a result, OCDE claims that "[t]o the extent that [P]laintiff wished to challenge any decision made regarding his employment, his remedy lay exclusively in administrative procedures," or, if necessary, mandamus.  (Mot. at 9-10.)

Plaintiff, on the other hand, argues that "the OCDE Guidelines . . . stand in the position of an employee handbook . . .[,] abrogate any at-will employment presumption and establish that [Plaintiff] could only be terminated for cause."  (Opp'n at 23-24 (citing *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 340 (2000)).)  Plaintiff's Complaint alleges that his termination was "without any cause or valid justification," and thus OCDE's termination of Plaintiff's employment constitutes a "breach of contract under the applicable regulatory Guidelines."  (Compl. ¶¶ 25-26.)  Defendant responds, however, by

---

[4] The California Education Code provides that permanent employees "shall be subject to disciplinary action only for cause as prescribed by rule or regulation of the governing board" and "are entitled to notice and a hearing prior to being terminated."  *Cal. Sch. Emps. Assn. v. Oroville Union High Sch. Dist.*, 220 Cal. App. 3d 289, 292 (1990) (citing Cal. Educ. Code §§ 45113, 45101).  However, "no similar protections are afforded probationary employees by the Education Code."  *Id.*

**CIVIL MINUTES – GENERAL**                            9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-00311-JLS (JCGx)            Date: July 6, 2015
Title: Michael M. Sato v. Orange County Department of Education

claiming that there are no facts present in this case that establish that the parties entered into a bilateral contract to govern the employment relationship. (Reply at 3.)

"The standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010) (internal quotation marks omitted). "[T]here is a statutory presumption that employment is terminable at will, and a contract of employment may be ended at any time at the option of either party." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1386 (1999). However, an express or implied agreement between parties can overcome the at-will presumption and establish that employment can be terminated only for cause. *Id.* A provision in an employee handbook or manual is relevant "in determining whether the parties' conduct was intended, and reasonably understood, to create binding limits on an employer's statutory right to terminate the relationship at will." *Guz*, 24 Cal. 4th at 340. "[T]he totality of the circumstances must be examined to determine whether the parties' conduct, considered in the context of surrounding circumstances, gave rise to an implied-in-fact contract limiting the employer's termination rights." *Id.* at 337 (internal quotation marks and citation omitted). "In determining the existence of such a promise of termination only for cause, [courts] look to the entire relationship of the parties, including such factors as the terms of any relevant application for employment, employee handbook or manual; the personnel policies and practices of the employer; the employee's longevity of service; actions or communications by the employer constituting assurances of continued employment; and the practices of the industry in which the employee is engaged." *Eisenberg*, 74 Cal. App. 4th at 1387.

As an initial matter, Plaintiff had been employed by OCDE for approximately two weeks prior to his termination. Plaintiff, therefore, was still in the probationary period of his employment with OCDE. (*See* Guidelines at 3.) Thus, as set forth in the Guidelines, the dismissal provisions found in Section XXVI of the Guidelines are inapplicable to Plaintiff's breach of contract claim. (*See* Guidelines at 7.) Further, Plaintiff points to the demotion and suspension provisions in the Guidelines, which provide that certain notice procedures must be followed before a management employee can be demoted or suspended. (*See* Guidelines at 5-7.) Plaintiff, however, was not demoted or suspended

**CIVIL MINUTES – GENERAL**      10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 15-00311-JLS (JCGx)            Date:  July 6, 2015
Title:  Michael M. Sato v. Orange County Department of Education

by OCDE; rather, OCDE terminated Plaintiff's employment.  The demotion and suspension provisions therefore also are inapplicable to Plaintiff's claims regarding his termination by OCDE.

Thus, the only provision of the Guidelines applicable to Plaintiff's breach of contract claim is the provision that states that Plaintiff "can be terminated during the probationary period for failing to meet the expectations of the job."  (Guidelines at 3.)  Nonetheless, construing all inferences in the light most favorable to Plaintiff as the Court must do at the motion to dismiss stage, the Court finds that Plaintiff has alleged sufficiently a breach of contract claim against OCDE.

Neither party asserts that Plaintiff was ever told that his employment with OCDE was at-will.  Rather, the Guidelines specify that OCDE can terminate Plaintiff "for failing to meet the expectations of the job."  (Guidelines at 3.)  If the Court construes all inferences in Plaintiff's favor, the Guidelines could be said to provide for a different standard than at-will employment.  "[F]ailing to meet the expectations of the job" suggests that Plaintiff's position had particular responsibilities and requirements, and for certain objective reasons, OCDE could terminate Plaintiff for failing to meet them.  The fact that OCDE provided this specific standard in the Guidelines, even though written with the permissive language of "can be terminated . . . ," suggests that OCDE intended the employment relationship to be something other than at-will.  Though the notice provisions set forth in Section XXVI of the Guidelines are inapplicable to Plaintiff's termination by OCDE because Plaintiff was still in the probationary period of his employment, this does not mean that Plaintiff's employment was at-will.  Rather, it simply means that OCDE did not have to comply with the requirements and procedures of Section XXVI.  According to the Complaint, and uncontroverted by Defendant, OCDE failed to provide Plaintiff with a reason for his termination.  As a result, Plaintiff has sufficiently alleged that the Guidelines created a binding limit on OCDE's statutory right to terminate its relationship with Plaintiff at will.

The Court recognizes that "it is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law."  *Miller v. State of California*, 18 Cal. 3d 808, 813 (1977).  However, the "often quoted language that public

___

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 15-00311-JLS (JCGx) | Date: July 6, 2015 |
| Title: Michael M. Sato v. Orange County Department of Education | |

employment is not held by contract has limited force where, as here, the parties are legally authorized to enter . . . into bilateral contracts to govern the employment relationship." *Retired Emps. Assn. of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1182 (2011) (internal quotation marks and citation omitted). The Court has found that Plaintiff has alleged adequately that an express or implied contract existed between Plaintiff and OCDE providing that Plaintiff could be terminated only for cause. "Thus, where the employment relationship is governed by contract, a public employee's breach of contract claim is not simply defeated by his status as a public employee." *Id.*

Accordingly, the Court DENIES OCDE's motion to dismiss Plaintiff's breach of contract claim.[5]

### C. <u>Supplemental Jurisdiction</u>

OCDE also contends that if the Court dismisses Plaintiff's § 1983 claim, "the Court may properly decline to exercise supplemental jurisdiction, and dismiss [Plaintiff's breach of contract claim] on that basis." (Mot. at 11.) However, in his Complaint, Plaintiff alleges not only that the Court has federal question jurisdiction over Plaintiff's § 1983 claim, but also that the Court has diversity jurisdiction because Plaintiff resides and is domiciled in Hawaii, and OCDE is a California governmental organization. (Compl. ¶¶ 1-4.) Accordingly, even though the Court has dismissed Plaintiff's § 1983 claim, the Court still has jurisdiction to decide Plaintiff's state breach of contract claim

___

[5] Defendant also argues that, even if Plaintiff can somehow state a cause of action for breach of contract, Plaintiff has failed to allege adequately a breach of contract claim because Plaintiff has alleged damages "in only the most conclusory terms." (Id. at 11.) However, in his Complaint, Plaintiff alleges that "[h]e lost all the future income and benefits to which he would have been entitled as an employee of the OCDE. This included significant insurance benefits, as well as benefits related to student loan forgiveness after a term of years for [Plaintiff]'s children. Some benefits had already accrued and vested as of the date of his termination." (Compl. ¶ 27.) Further, Plaintiff alleges that "[he] incurred all the costs attendant with his relocation from Hawaii to Orange County, including leasing an apartment, leasing a car, purchasing cable, internet, phone, appliances, furniture and amenities, as well as the cost of travel from Hawaii to Orange County." (Id.) The Court finds that Plaintiff has alleged adequately the damages he suffered as a result of Plaintiff's purported breach of contract.

___

**CIVIL MINUTES – GENERAL**          12

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. SACV 15-00311-JLS (JCGx) | Date: July 6, 2015 |
| Title: Michael M. Sato v. Orange County Department of Education | |

based on diversity jurisdiction.

**IV. CONCLUSION**

      For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's Motion. The Court DISMISSES WITH PREJUDICE Plaintiff's § 1983 claim. Defendant's Motion, however, is denied with respect to Plaintiff's breach of contract claim.

                                              Initials of Preparer: tg

___